# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| C AND C WINE AND SPIRITS, INC. and HOYT HAYES CONSTRUCTION, INC., as Assignee, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:23-cv-01024-JPM-jay |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This cause is before the Court on Defendant Pennsylvania National Mutual Insurance Company's ("Penn" or "Defendant") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9.) For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

## I.   BACKGROUND

### a.   Factual Background

Plaintiff is a corporation with its principal place of business in Jackson, Tennessee. (ECF No. 1-1 ¶ 3.) Defendant is a Pennsylvania corporation with its principal place of business in Harrisburg, Pennsylvania. (Id. ¶ 3; see also ECF No. 1 ¶ 5.)

A fire took place at C and C Wine and Spirits ("C and C"),[1] located at 2644 North Highland Avenue, Jackson, Tennessee 38305 on October 26, 2019.  (ECF No. 1-1 ¶ 7.)  C and C had an insurance contract with Defendant, and it filed an insurance claim.  (Id.)  Following the fire, C and C assigned the insurance claim to Plaintiff.[2]  (Id.)  Plaintiff submitted a Proof of Loss to Defendant along with other "documents, invoices, and photographs."  (Id.)  Defendant has been actively engaged in investigations between the date of the fire and today.  (Id.)

Plaintiff has submitted to the Court an additional Statement of Facts along with its Response to the instant Motion, although this is a Motion to Dismiss and not a Motion for Summary Judgment.  (ECF No. 15 at PageID 184.)  These "facts" are not properly before the Court.  Plaintiff has not sought to amend its Complaint.  "Ordinarily, when the omission of a critical allegation in a complaint is highlighted by a defendant's motion to dismiss, the appropriate method for adding new factual allegations is to request leave to amend the complaint in conjunction with responding to the motion to dismiss."  Bishop v. Lucent Techs., Inc., 520 F.3d 516, 521 (6th Cir. 2008).  The Court will not consider Plaintiff's additional statement of facts, as it was pleaded improperly.

### b. Procedural Background

Plaintiff initially filed the Complaint in the instant case in the Chancery Court of Madison County, Tennessee at Jackson on September 16, 2022.  (ECF No. 1-1.)  Defendant removed the suit to federal court on the basis of diversity on February 6, 2023.  (ECF No. 1 at PageID 1–2.)  The case was reassigned to Judge Jon P. McCalla for all further proceedings on March 13, 2023.  (ECF No. 16.)

---

[1] C and C is also occasionally styled "C&C Wine and Spirits" in the pleadings.  (ECF No. 1-1 at PageID 9.)  The Court styles the company's name in the manner consistent with the caption.
[2] The Parties agree that C and C, having assigned all its interest to Plaintiff, does not have standing to bring suit and is neither a proper nor a necessary party to the instant matter.  (ECF No. 15 at PageID 189.)

As previously noted, Defendant filed the instant Rule 12(b)(6) Motion to Dismiss on February 9, 2023.  (ECF No. 9.)  Defendant's Motion was accompanied by a Memorandum of Law (ECF No. 9-1), a copy of the insurance policy at issue (ECF No. 9-2), and a copy of the document assigning the insurance claim.  (ECF No. 9-3.)  Plaintiff filed a Response on March 13, 2023.  (ECF No. 15.)  Defendant filed a Reply on March 28, 2023.  (ECF No. 21.)  Defendant's Reply was accompanied by a copy of its proof of loss request (ECF No. 21-1), a copy of its claim denial (ECF No. 21-2), and a copy of its claim payments.   (ECF No. 21-3.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level."  Ass'n of Cleveland Fire

Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012). A court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

While consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., 508 F.3d at 335–36; see also Garton v. Crouch, 2022 WL 275519 (M.D. Tenn. 2022) (citing Brent v. Wayne Cyt. Dep't of Human Servs., 901 F.3d 656, 694 (6th Cir. 2018)) ("[I]t has long been the rule that a court may consider, not only the Complaint and exhibits attached to it, but also

exhibits attached to a defendant's motion to dismiss, 'so long as they are referred to in the Complaint and are central to the claims contained therein.'").

## III.   ANALYSIS

### a.   Documents Attached to the Pleadings

Defendant attaches a number of documents to the instant Motion, and to its Reply.  (See ECF Nos. 9-2–3; see also ECF Nos. 21-1–3.)  The Court's opinion will reference the insurance policy (ECF No. 9-2), the copy of the proof of loss (ECF No. 21-1), the copy of the claim denial (ECF No. 21-2), and the estimated settlement checks (ECF No. 21-3).  The insurance policy, the proof of loss, and the insurance claim are directly referenced in the Complaint and integral to Plaintiff's claims, so the Court may consider them.  (ECF No. 1-1 ¶ 7); see also Commercial Money Ctr., 508 F.3d at 335–36.  The settlement checks are not referenced in Plaintiff's pleadings, but they are integral to Defendant's claims.  That Defendant has already paid over $1.7 million to Plaintiffs inevitably impacts the Court's understanding of the amount of coverages and Plaintiff's recovery rights.  (ECF No. 21-3.)  "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 797 (6th Cir. 2012) (citing Mediacom Se. LLC v. BellSouth Telecomms., Inc., 672 F.3d 396, 400 (6th Cir. 2012)).  Plaintiff has not pleaded any fact that conflicts with the existence of these settlement checks or their validity, and therefore the Court may consider them.  (See generally ECF No. 1-1.)

### b.   The Statute of Limitations

The question of the date of accrual of a cause of action is a question of law. See Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC, 446 F.Supp.3d 258,

274 (M.D. Tenn. Mar. 9, 2020) (citation omitted).  The choice of law rule of the forum state applies in a federal diversity action.  Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009).  The insurance policy at issue in the instant case was issued in Tennessee.  (See ECF No. 9-2.)  Tennessee follows the common law rule of *lex loci contractus*, whereby contracts are presumed to be governed by the law of the state in which they are executed.  Williams v. Smith, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014).  The Court therefore applies Tennessee law in interpreting the insurance policy at issue.

"Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally."  McKimm v. Bell, 790 S.W.2d 526, 527 (Tenn. 1990) (internal citations omitted).  Under Tennessee law, interpretation of a written contract is a legal, not a factual, issue.  Brandt v. Bib Enters., Ltd., 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998).  An insurer's rights and a policyholder's rights "are governed by their contract of insurance."  Merrimack Mut. Fire Ins. Co. v. Batts, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001).  In the instant case, the Parties agreed to an insurance contract that set out a two-year limitations period in which to bring suit.  (ECF No. 9-1 at PageID 94.)  "[A] contractually agreed limitations period in an insurance policy is valid and enforceable in Tennessee."  Certain Underwriter's at Lloyd's of London v. Transcarriers Inc., 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002).

Insurance policies may require the insured to file proof of loss with the insurer, or they may require a proof of loss only upon request.  Insurance policies may also include a period of time after a proof of loss is submitted, during which period the insurer cannot be sued while it evaluates the claim, called an "immunity period."  If an insurance policy does not require the insured to file a proof of loss with the insurer, the insured party's cause of action accrues when the insurer denies the claim.  Das v. State Farm Fire & Cas. Co., 713 S.W.2d 318, 322–24 (Tenn. Ct. App. 1986).

The acceptance of a claim during the immunity period had the same effect as a denial for the purpose of triggering the contractual limitations period.  Daniel v. Allstate Ins. Co., No. W2014-01965-COA-R3-CV, 2015 WL 1578553, at *4 (Tenn. Ct. App. Apr. 6, 2015).  This is because an insurer's decision to accept or deny a claim "acts as a waiver of its immunity from suit, and the contractual limitations period begins to run."  Id.  The insurance policy at issue in the instant case only required a proof of loss upon the request of the insurer.  (ECF No. 9-2 at PageID 94.) Defendant requested a Proof of Loss from Plaintiff on February 11, 2020.  (ECF No. 21-1.) However, Defendant had already tendered three estimated settlement checks to Defendant on November 14, 2019.  (ECF No. 21-3.)  The tendering of the settlement checks acted as a waiver of Defendant's immunity from suit, and it was from November 14, 2019, that the statute of limitations began to run.  See Daniel, 2015 WL 1578553.

The instant case is analogous to the Daniel case, decided by the Tennessee Court of Appeals.  See Daniel v. Allstate Ins. Co., No. W2014-01965-COA-R3-CV, 2015 WL 1578553 (Tenn. Ct. App. Apr. 6, 2015).  In Daniel, a home was damaged by fire, and the insurer submitted an estimate and tendered a settlement check to the insured parties, as in this case.  Id. at *1. Plaintiffs sent the insurer a letter over a year later, claiming that they were owed additional money. Id.  at *2.  The plaintiffs' contract with the insurer stated that any "suit or action must be brought within one year after the inception of loss or damage."  Id. at *1.  In both this case and that case, therefore, the suit for allegedly unpaid claims was brought after the contractual limitations period had run when counted from the date of loss or the date of payment of an estimated settlement.  The initial question in that case, as in the instant case, was from what date the limitations period ran.

The Daniel court held that the insurer's choice to grant or deny a claim ends the settlement period, and that is when the contractual limitations period began to run.  Id. at *4.  The Daniel

court determined that the insurer ended the settlement period on the date that it tendered a settlement check to the plaintiffs. Id.  This was true even though the tendered settlement check was for an estimated value of the damages and the insurer offered to re-evaluate the amount of its payment to the Daniel plaintiffs after the contractual limitations period had expired. Id. at *1–2.

This Court is bound to follow Tennessee law and conclude that the statute of limitations began to run on the date Defendant tendered its estimated settlement check to Plaintiff, on November 14, 2019, because this was an acceptance of Plaintiff's insurance claim and therefore the date that Defendant waived its immunity from suit. Id. at *4.  This is true even though the tendered settlement check was for an estimated value of the damages, and the insurer continued to investigate Plaintiff's claim. See generally id.  The contractual statute of limitations in the instant case was two years. (ECF No. 9-1 at PageID 94.)  Plaintiff's claim is therefore time barred as of November 14, 2021.

     *c. Equitable Estoppel*

Plaintiff contends that it was in settlement negotiations with Defendant, and that Defendant was still investigating the insurance claims, until several weeks before this case was filed. (ECF No. 15 at PageID 188).  Plaintiff therefore argues that Defendant is estopped from raising the statute of limitations. (Id. at PageID 188.)

The party asserting equitable estoppel bears the burden of proof. Redwing v. Catholic Bishop for the Diocese of Memphis, 363 S.W.3d 436, 460-61 (Tenn. 2012).  Under Tennessee law, the three elements of equitable estoppel are

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 774 (Tenn. 2004) (quoting Consumer Credit Union v. Hite, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990)).  "The doctrine of equitable estoppel applies only when the defendant engages in misconduct."  Redwing, 363 S.W.3d 436, 460 (Tenn. 2012) (citing B & B Enterprises of Wilson Cnty., LLC v. City of Lebanon, 318 S.W.3d 839, 848 (Tenn. 2010)).

The Tennessee Supreme Court has set out a series of examples of situations in which Tennessee courts have invoked the doctrine of equitable estoppel, none of which is analogous to the instant case.  Id. at 460–61 (collecting cases).  However, "[t]he focus of an equitable estoppel inquiry 'is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct.'"  Id. at 461 (quoting Hardcastle v. Harris, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004)).  This is a fact-based and case-specific inquiry into "whether the defendant's conduct is sufficiently unfair or misleading to outweigh the public policy favoring the enforcement of statutes of limitations."  Id. (citing Hardcastle, 170 S.W.3d at 85).

In the instant case, Plaintiff's pleadings are far from sufficient to establish that Defendant's conduct amounted to misconduct, let alone conduct so unfair or misleading as to outweigh the public policy interest in enforcing statutes of limitations.  Id.  Plaintiff has not pleaded that Defendant attempted to mislead it.  (See generally ECF No. 1-1; see also ECF No. 15.)  Plaintiff has not pleaded that Defendant represented that it would not pursue a statute of limitations defense.  (Id.)  In fact, Defendant gave Plaintiff notice that the statute of limitations was running.  (ECF No. 21-2 at PageID 227.)  Construing the facts in the light most favorable to the Plaintiff, it has not made any assertion that Defendant "engaged in misconduct."  Redwing, 363 S.W.3d at 460.  Plaintiff asserts that Defendant "induced [it] to believe that Penn was going to pay the outstanding claims pursuant to the policy of insurance."  (ECF No. 15 at PageID 186.)  Plaintiff argues that

Defendant continued to investigate Plaintiff's insurance claims, and negotiate with Plaintiff regarding those claims, through at least 2022.  (Id. at PageID 185.)  However, "[i]f limitations periods were to toll merely because further negotiation, inspections, and adjustments occur, it would defeat the purpose of the limitations period."  Murphy v. Allstate Indem. Co., 2014 WL 1024165, at *3 (E.D. Tenn. Mar. 17, 2014).  Defendant's continuing investigation of Plaintiff's claim is not a misleading inducement not to bring suit.  The public policy interest favors allowing insurers to negotiate, investigate, and adjust their estimates after tendering payouts.

> To allow a full year's renewal of the one[-]year time limitation from the termination of renewed investigation or discussion would have a chilling effect upon [renewals of investigations or negotiations of denials of liability by insurance companies]. The most amiable and agreeable insurer would be most reluctant to renew investigation or discussion if the result would be a renewal of the entire year allowed for bringing suit.

Das, 713 S.W.2d at 324.  Public policy also favors the predictability of a concrete, predictable limitations period that all parties may rely upon.  See Hardcastle, 170 S.W.3d at 84 (citing Brown v. Hipshire, 553 S.W.2d 570, 571 (Tenn. 1977)) ("Statutes of limitations are favored because they promote the timely pursuit of legal rights by suppressing stale claims").  Construing the facts pleaded in the light most favorable to the Plaintiff, Defendant's actions in continuing to investigate Plaintiff's claims and continuing to negotiate with Plaintiff, without any pleading indicating that such investigations and negotiations were not undertaking in good faith, cannot be understood to be actions amounting to misconduct.

"Once the clock on the limitations period started ticking, Plaintiffs had a series of choices regarding whether to keep negotiating, whether to invoke certain provisions of the contract, and, particularly as the limitations period drew to a close, whether to file a law[]suit."  Murphy, 2014 WL 1024165, at *4.  Under Tennessee law, Plaintiff missed its window to sue Defendant if it felt that the estimated settlement check did not fully pay out its claims.

IV.   **CONCLUSION**

For each of the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**.

**SO ORDERED**, this 7th day of June, 2023.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE